Next case on the call this morning is agenda number 19, case number 109-300. Irwin Industrial Tool Company v. Department of Revenue, et al, etc. Council may proceed. Good morning. May it please the Court. Council, I'm David Hughes, and I represent the petitioner, Irwin Industrial Tool Company. This case concerns whether the Illinois Department of Revenue may impose a use tax on an airplane that was hangared and based in Nebraska. Now, despite the fact that the Illinois Department of Revenue is a party to this case, and despite the fact that the tax in question is an Illinois use tax, this case is really about Nebraska. And I say that for two reasons. The first is that Nebraska has chosen, as a matter of tax policy, not to tax common or contract carriers. And for that reason, the aircraft that is an issue in this case was never subject to Nebraska tax. But for that reason, the state of Illinois, and it was only Illinois, sees an opportunity, and they have attempted to try to tax the full value of this airplane. The other reason that Nebraska is critical to this case is that the owner of the aircraft in question is a real Nebraska business. This is a business with employees in Nebraska, assets in Nebraska, books and records in Nebraska. This is not a situation where we have an Illinois business that is trying to hangar its plane or park its plane in Nebraska simply to avoid Illinois use tax. This is a... Any significance, Mr. Hughes, to the fact that the original bill of sale, et cetera, listed plaintiff as the purchaser and listed an Illinois address? I don't think so, Justice Thomas, no. It was really a Scribner's error in oversight. And even though the bill of sale and the registration does list Illinois, the Hoffman Estate's address, as the address for the owner, it was a mistake which was later corrected or amended. So, no, I don't think there's any significance at all to that. Is there an agreement amongst the parties, between the two parties, as to how much time the airplane spent in Illinois? No, there is disagreement on that. We have looked at the flight logs and we have determined that the airplane spent 4% of its time in Illinois and we arrived at the number. It's actually a little bit less than 4%. Is that the 10 days that there were flights, that flights left from... Right. We used, actually what we used was ground time. We looked at the amount of time that the plane spent on the ground in Illinois and we compared that to the total time that the airplane's owner owned the airplane. And we came up with a figure that was less than 4% of the time in Illinois. What the defendants have suggested is you need to look at the total number of flights that were made into Illinois as compared to the total number of flights that the airplane has made. We think that approach is misleading because this is an airplane that when it landed in Illinois spent very little time here. That is what the appellate court used though to establish the nexus, right? The number of times that the plane actually landed. The appellate court in addressing the substantial nexus question did look at the number of flights, yes, that the airplane took into Illinois. But we're suggesting either from a substantial nexus standpoint or what we call the apportionment issue, which I will address later, that either way if you look at the number of flights into Illinois, it doesn't really accurately represent the amount of use or what we consider to be the absence of use of the airplane in Illinois. Because again, this was not a plane that was hangered in Illinois. This plane was never maintained in Illinois. This plane never spent consecutive days in Illinois. This is a plane that on 70% of its trips into Illinois spent less than an hour in the state. This is a plane that would arrive, drop people off, pick people up, and then leave. And for that reason, we don't see that there's a substantial nexus in this case. Is that the basis of the distinction with the Missouri case? Sure. I think the Missouri case is different because there you had an airplane that even though it was hangered outside Missouri, when it went into Missouri, it often stayed there for consecutive days at a time. In fact, the court notes, the Missouri Supreme Court notes that it might spend up to nine days in Missouri. Our airplane did not do that. Our airplane arrived and it left. It did spend some nights in Illinois, but only single nights. And over this two-year period, only 25 nights, so on average about once a month. So the presence in Illinois is not as continuous as the presence that you would have in the Superior Aircraft case from Missouri. I think what's also important here... What is the bottom limit of days that would make any difference? I'm sorry? What is the bottom limit that we could, that the airplane would have to achieve to be considered having a nexus in Illinois? Well, I would certainly suggest that if the airplane is hangered here, that is what the appellate court concluded in earlier decisions in the Archer Daniels Midland case, in the Square D case from 1992, and there's a whole host of cases from other states holding that if an airplane is hangered in a state, then that state has the constitutional authority to tax the airplane. I think short of that, I think if you have a situation where the plane is not hangered in the state and spends a nominal amount of time in the state, then I think at worst the tax should be proportionate to the amount of time that the airplane spends in the state. I think the facts that we have in this case are interesting if you contrast them to the facts that this court addressed in the Browns Furniture case from 1996. Browns Furniture did not concern an airplane that was moving in interstate commerce, but what it did concern was a Missouri furniture seller that was located right over the river in Missouri, and Browns would sell into Illinois, and the question was whether there was a substantial nexus between Browns Furniture and Illinois. So we have the same substantial nexus inquiry that we have in this case. In Browns, though, the retailer was making up to 900 deliveries into Illinois in a 10-month period. That works out to about 90 deliveries a month. Here, as the appellate court noted, there were 130 flights into Illinois over a two-year period. That's about five to six times a month. This court in Browns Furniture concluded that Browns had a continuous presence in Illinois because of the number of deliveries that it was making, but Browns was here 90 days a month. It was here about three times a day. Here, this airplane is here at most five or six times a month, and when it's here, it's not here very long. I think the other important point on substantial nexus is that the focus has to be on the activity that the state is seeking to tax. The activity is the use of the airplane in the state. The issue here is not whether the airplane's owner, this company called ATC Air, the issue is not whether ATC Air itself or its corporate parent are somehow generally subject to tax in the state of Illinois. So the fact, for example, that ATC Air's parent has an office in Hoffman Estates or the fact that ATC Air might have some officers in Illinois, that doesn't really affect the proper analysis here. The proper analysis or the real question is whether or not there's a connection, a nexus, if you will, between the activity, the use of the airplane, and the state of Illinois. What's the purpose of this tax? It serves a couple of different purposes. One purpose traditionally is to protect local retailers to ensure that if an Illinois resident were to go to another state to buy an item of property, that Illinois retailers are not harmed by that. Because the concern is that if a bordering state were not to tax a particular type of property, then Illinois retailers might be harmed because Illinois residents would go to other states. So the use tax then is used as sort of a buttress or a complement, if you will, to the sales tax in those situations. But I started my argument by making that point, which is this is not a situation. How would the proportionate valuation be made? If somebody were to go to another state and bring the property into Illinois. We have certain information about where this plane was in Nebraska and Illinois. I thought you suggested there would be a way of dealing with this case in which rather than taxing the whole plane, we would tax only that part of the plane that spent time in Illinois. Yes, absolutely. How would you measure that? What we have suggested is that there needs to be a comparison between the amount of time, ground time, if you will, that the airplane spent in Illinois versus the amount of time that the airplane's owner owned the plane. And based on our calculations, that comes out to just less than 4%. So we argue that the use tax here should be equal to approximately 4%. It's a shame you made that measurement upon the number of flights. That was not our approach. Our approach was basically. I understand that. But measuring the flights would be better for you than measuring the whole plane for a year. Well, I think if you measure the flights with all due respect, the percentage increases. Because if you simply compare the number of flights into Illinois as compared to flights everywhere, the percentage is closer to 45, 50%. So the percentage actually does increase. What we have suggested is that approach, again, is misleading because it doesn't really accurately account for the fact that this plane, when it was here, spent very little time here. It just came, dropped people off, picked people up, and left. Should we look at air time? How much time? It's possible. I mean, if there's a way to measure that, again, what we're dealing with here is a use tax. And certainly within the definition of use is storage. And so to the extent that the plane is on the ground, it's not being stored per se here. But I think what the use tax tries to capture is actual use within the state. Well, in that vein, obviously airplanes are made to be flown, not to sit on the ground. So you're not getting your best use of the property if you have it hangered. Presumably, if you have it hangered long enough, you don't need it at all. Sure. So I'm just trying to figure out what kind of a measure that's realistic to look at to determine whether the activity should be subject to tax. Right. Well, again, there's two things going on here. One is whether the activity itself should be subject to tax. And we're suggesting, on the one hand, that there's not enough activity here to warrant a tax. On the other hand, to the extent that the tax is appropriate, I think the important case here, and I think it goes to your question, is the Jefferson Lines case. What the U.S. Supreme Court said in Jefferson Lines is that in evaluating a tax to determine whether or not it is, as we say, fairly apportioned, what you have to look at is two things. You have to look at what the Supreme Court calls internal consistency, but then you also have to take a look at what the court calls external consistency. And I think the problem with the appellate court decision below, and I think the problem with a number of the state decisions on this issue, is that courts haven't really come to grips with this concept of external consistency. Because what external consistency is supposed to do is it's supposed to measure the economic activity in the state. There has to be some type of economic justification for the tax. And I think the concern here is that if you look at the activity in the state, it's fleeting. It's brief. It's momentary. Yet the state is seeking to tax 100% of this aircraft. And from the perspective, I think of the … The plane was used pretty much as a taxi for Irwin and his management team, wasn't it? It was used by the company generally. It was owned by a special purpose subsidiary, but it was used in part to transport officers and other company executives who were based in Hoffman Estates. It was also used, though, to transport employees. It was used to transport customers. It was used to transport friends. It was used for a whole host of purposes. But all relating to the well-being of the company. It was used for corporate purposes. This was not … We're not suggesting at all that this was some type of common carrier that made itself available to the public. I mean, this was an airplane. This was a corporate jet, if you will, that was used by a company. I would also suggest, though, that if you look at the substantial nexus cases, including this court's decision in Brown's Furniture, what you're going to find is less of a focus, if any focus at all, on purpose and intent. What you're going to find instead is a focus on what the courts refer to as physical presence. How much time, how much presence did either an asset or a company have in a given state? So from that perspective, you know, despite the fact that this airplane might have been used for corporate purposes, if you will, again, at the end of the day, what's really important here is the fact that the airplane spent very little time. I would also suggest that if you take a look at the decisions from other states, you're going to find in the vast majority of those cases that the airplanes were hangered in the taxing state. New York has had a policy in place for over 30 years that it will not tax airplanes that come into the state, that are hangered outside the state, and that are simply passing through the state as part of an interstate flight plan. And that is the pattern that most of these cases and most of these decisions have followed. Mr. Hughes, earlier Justice Freeman asked you about the purposes of the tax, and I heard you state at least one purpose about protecting Illinois businesses.  No, no, that is the traditional purpose is to protect local businesses, the local Illinois retailers, so that Illinois residents do not purchase an item somewhere else and somehow avoid the use tax. What I was suggesting is that that's not what we have here. Again, this is not an Illinois business that went somewhere else to buy its airplane and then put the plane in Nebraska simply to avoid Illinois use tax. This is a business, and if you want to look at it collectively as the entire business, this is a business that has been manufacturing tools in Nebraska for over 100 years. So they, if you will, I mean, they got lucky. Nebraska chose not to tax this airplane, but it was a Nebraska business. They did not put the plane in Nebraska to avoid the tax. They just happened to be there, and they happened to be in a state that chose not to tax the plane. Now, the appellate court spends a significant amount of time in its decision addressing credits and this idea that a full unapportioned use tax in this case is appropriate simply because if the tax is owed to Illinois, the airplane owner can simply claim a credit in another state. The concern and the problem that I have with that approach is that it avoids or it ignores this external consistency test. The external consistency test tries to measure economic activity in the state. It has nothing to do with credits. The internal consistency test, which again is the alternative test recognized by the Supreme Court, has everything to do with credits. We have not suggested in any of our briefing that this tax somehow violates internal consistency. But from an external consistency standpoint, the credits that might or might not be available in other states will not save this tax. And that's another concern that we've raised with credits is that many state credit statutes apply only to purchases or only to tax made in the purchasing state so that if a tax is paid in another state, which here would be Illinois because Illinois is not the state of purchase, there are many state credit provisions that do not apply unless the property is or unless the tax is paid in the state of purchase. And so for that reason, I have real doubts that a credit might be available here. And I think it's also important to note that from a constitutional standpoint, the test is not whether tax has in fact been paid. The test is whether there is a risk or a threat of multiple taxation. And there's no question that we have that threat here. So for all those reasons and the reasons expressed in our briefs, I would respectfully ask that this court reverse the decision of the appellate court. Thank you. Paul Burks. Good morning. My name is Paul Burks. I'm an assistant attorney general and I'm representing the Illinois Department of Revenue. Mr. Burks, let me get back to that purpose. The question, do you disagree with the purposes outlined by Mr. Hughes a moment ago? I would add additional purposes. One of the purposes is to protect Illinois retailers from the purchase of items outside the state being brought back into the state and thereby hurting the business of Illinois retailers. A second purpose is obviously to maintain the revenues of the state of Illinois. How is the purpose of this act furthered by the analysis of time spent as given by the appellate court, the 49%? Well, the purpose, the use tax, the purpose is furthered because when a taxpayer pays the use tax, they get the right to unlimited eternal use of that property in the state. They don't, and they pay it at the outset. It's a one-time tax, not a yearly tax where we measure the amount of time the item has been used in the state. In that respect, it's exactly like a sales tax. You pay it once, you never pay it again, and you use that item forever in the state. And because virtually every state, at least 45 states, have identical use tax statutes with credit provisions, it's actually a tax that permits you unlimited use of your personal property almost anywhere in the United States. So this one-time tax, which is generally assessed at the time of first use, so we don't know when we assess it how often that item is going to be used in the state of Illinois. All we know at the time that it's assessed, generally speaking, is that the item was used in the state of Illinois. So the purpose of the act is to preserve the revenues of the state by taxing items that are purchased outside the state for which no taxes were paid, and then to allow those items free flow in interstate commerce without ever having to tax them again. So if we were to take the apportionment argument that Irwin makes in this appeal, what we would have to do is completely change the use tax. Because we would have to either ask them, I guess at the outset, how often do you intend to use your plane in our state? And then we would have to check on that periodically. Or we would have to alter the use tax completely so it's not like a sales tax, but instead like an income tax where every year we check on how often this property was used in our state. Maybe in one year it was used 4 percent, but the following year it was used 12 percent. But that's not a use tax. In essence, we would be obliterating a use tax and changing it into a personal property excise tax or income tax of some sort. So that's why the use tax has never been apportioned. And when Irwin sort of complains that external consistency requires apportionment, what Irwin is ignoring is that the use tax is for unlimited use. So because the taxpayer pays for unlimited use when it pays the use tax, the state that allocates that tax, that applies that tax, is not overextending the bounds of its authority. Is it your position that Irwin's office in Hoffman Estates provides this sufficient nexus for taxing the airplane? Absolutely. Because it's ATC Air's office in Hoffman Estates as well. ATC Air has three of its four officers work in that Hoffman Estates office. And when they bought the plane, they noted that the Hoffman Estates office was the home office of ATC Air. So would the State of Illinois be permitted to tax the plane through that nexus, even if they never made a flight into Illinois? Well, then they would never use it in Illinois. So the statute wouldn't be met. So it has to be more than just their principal place of business. It would allow them to tax it under what you just said. Well, under the statute, they would have to use the plane in Illinois before Illinois could tax it. Would a single flight be enough? A single flight would be enough as long as they had corporate officers who worked in Illinois. And let me just read you the quote from Brown Furniture regarding what nexus is, what substantial nexus is. It's demonstrably more than the slightest presence manifested by the conduct of economic activities in the taxing state performed by the taxpayer's personnel. So under that definition that this court put forth in Brown's Furniture, which is derived from Quill, the Supreme Court case, the corporate officers working in Hoffman Estates establish nexus. The single flight of the plane satisfies the statute's definition of use. And then when they pay that tax, assuming they haven't paid taxes in any other state, they are entitled to unlimited use of that plane forevermore in the State of Illinois. That's what they get for the tax. They're not paying for 2% of time or 49 flights or, you know, because we're working retrospectively in this case, we're not seeing how the use tax actually works generally or is intended to work. They're paying for forevermore being able to fly that plane in Illinois. They could even hanger it here. They make one flight to Illinois, they're subject to the use tax, but then they can hanger it here, refuel it, let it sit for three weeks, fly it back and forth. That's what the use tax is. It's a prospective one-time tax on the use of a property in a state. And you dispute what opposing counsel said regarding whether or not credits would be received in other states. Oh, yes. Absolutely. So is it the first state gets the use tax and then every state after that would have to apply the credit of that use tax? That's correct. Now, I don't think every state has a credit, but the Supreme Court has pointed out and Hellerstein on taxes pointed out that 45 states have credits. And since that time, I know there was a case in Vermont where they struck their use tax as unconstitutional because it had no credit. Indiana did the same. So there might be a couple of use taxes out there that are susceptible. But to get to the core of your question, generally speaking, where the item is purchased, a sales tax is assessed, and that's the one and only tax on the item. Where there's no sales tax, generally speaking, the first use is where the tax is assessed. In this case, because they moved the plane into a state that has no tax on this particular type of item, they never paid it. Is the amount of the use tax, the formula, is that consistent in these 45 states? Yes. It's on the full purchase price of the personal property. That is correct, the full price. And that's because, as I've said, it's a one-time tax on the use, just like a sales tax. A one-time tax, you never get hit with it again once you've paid it once. When you're talking about credit, recognizing credit from other states, it simply means, I guess, that if Illinois has imposed and collected its use tax, no other state can, or if some other state has already done that, Illinois cannot. That is correct. It's not a portion, but credit based on time. That is correct. If, for example, Nebraska did tax this plane, and Nebraska had a 6% use tax, just like we do, and so when they hangered it in Nebraska or landed it there, they paid 6% of the purchase price to Nebraska, and then the Illinois tax man came along, they could say, hey, we already paid our use tax in Nebraska, and under the Illinois statute they would have to pay nothing to the State of Illinois. If Nebraska taxed it at 3%, could Illinois tax the difference? Illinois could tax the difference. And when they paid that 6% to Nebraska, hypothetically, I would say no, they didn't, they could then decide to hanger it in Illinois, and Illinois still would not assess a use tax. So they got a lot more for their use tax than 3% of ground time or 270 flights. They didn't use everything they got, but what they got is the eternal use of the plane here. Going back to your premise that the tax is assessed at the outset and you really don't know how many flights you're going to take into Illinois, once the plane comes into Illinois, you're saying you can assess the tax, and if they never bring it back again, it's still properly assessed. Is that correct? As long as they have a nexus with the State. Justice Garland's question was the office gave the nexus, but if the plane never came in, you said it wouldn't be taxed. If it comes in once, just to show it off and they take it back, it's still, if Illinois finds that out, you can tax it. Thinking a little further on that question, if I could just modify my answer a little bit. The nexus requirement would be met in that circumstance, and the use tax statute would be satisfied. But there is a fourth prong to the complete auto test, which says, is the tax proportionate to the benefits that are being provided? It's not a question that really arises here. I can see it arising in that case. We would argue in that case that, look, we're giving them unlimited use. They can bring it back. They can hanger it here. They can keep it here forever. Whether they want to use it that way or not, I'm sure they would argue otherwise. But I would definitely say that for purposes of this case, the one flight with the corporate office here would establish nexus plus sufficient use to tax. Do U.S. Supreme Court decisions support your argument that this use tax here is externally consistent? Yes. Yes, it does. I would say the best U.S. Supreme Court case is D.H. Holmes, where they expressly say D.H. Holmes is a case out of Louisiana, where they expressly say this case or this tax, a use tax on the distribution of catalogs in the state of Louisiana. They say this tax is fairly apportioned because a credit is provided for use taxes paid in all other states. They expressly state that. Is it your argument that proportioning the tax would not work, the 4% or the 49% or whatever basis for apportioning it, whether it's based upon time in Illinois or number of flights? That's correct. It wouldn't work for administering the use tax because generally speaking, we don't know how many times somebody is going to use their property in the state when we assess the use tax. And we assess it once and then we never look again. So with this property, because they sold it before we assessed the tax, you sort of have this closed system where you can look at it and say, oh, well, they only flew it in here 270 times. Why don't we just ding them for each flight? But that's not how our use tax works, generally speaking, although in this case, obviously, you do have that closed system. But we don't make exceptions to the statutory structure because of the lateness of the tax assessment. And there's certainly no constitutional requirement that we do so, which I guess is the issue here. Now, counsel does make the point that purpose doesn't matter for in terms of assessing nexus. And I would just like to dispute that assertion and say that it does. And again, point to the case of D.H. Holmes for the proposition where they say, where the taxpayer said we don't have sufficient nexus. The facts of D.H. Holmes were as follows. There's a taxpayer with 13 stores in Louisiana. And it sends catalogs from out of state to certain residents in Louisiana. And it has those catalogs printed. It purchases them. It mails them from out of state. And it only distributes them in the state of Louisiana. That's its only use of the property in the state. And the state of Louisiana assesses a use tax on each one of those catalogs for the use of distribution. And they say we don't have enough nexus because all our catalogs did, they were all printed and they were produced and they were published out of state. And by the time they got here, they belonged to somebody else. We weren't using them anymore. All we did was fly them into the state. And the court says, wait a minute, you have 13 stores in Louisiana. The purpose of flying those catalogs into our state was to increase your sales in Louisiana. We find, quote, nexus aplenty here. So I think that Supreme Court case sort of really refutes this argument that why they flew the plane doesn't matter. And applying it here, you see that the officers of the corporation were all right here in Illinois, as Justice Fitzgerald pointed out. This was a taxi for the corporate officers of the company. They were the corporate officers of Irwin and those of ATC Air. The same people were the corporate officers. And the purpose was to advance their business in Illinois as well as other places. So I think that that is very relevant to the nexus assessment. That's what Justice Gordon said in the appellate court, that this was critical to their business plan and therefore the quantity of flights and because of their integration with the corporation established nexus. As to the method of apportionment, Irwin has come up with this amount of ground time. I will point out that no other case that has even asked the question has considered amount of ground time to be the relevant proportionate analysis. In Superior Aircraft, which was the Missouri case, they talked about 17.7% of flight hours logged on flights to Missouri. Now they went on to say Missouri can tax the whole thing, even though the corporation was, principal place of business was in Ohio, plane was hangered in Ohio, flew 17.7% of its flights to and from Missouri. They said Missouri has every right under the Constitution to tax the entire value of that plane under their use tax. Counsel has suggested that case is distinguishable. I think he said because the plane spent up to nine days in Missouri at a stretch. Here the plane spent 25 nights in Illinois, as counsel conceded. I don't see why that distinction makes any difference. We have hangered outside the state, principal place of business outside the state, some corporate presence within the state, and some use by flights to and from the state. The cases are indistinguishable. Whitcomb, which is the case in Vermont. New Hampshire Corporation, corporate headquarters, principal place of business in New Hampshire, hangered in New Hampshire, 17% of the flight times on trips to or from Vermont. Can Vermont tax the entire value of that plane? Yes, they can. They don't have to apportion it. As long as they have a credit for taxes paid in other states, it's a constitutional tax. Again, indistinguishable from this case. And obviously these cases aren't binding here. They're Missouri Supreme Court, Vermont Supreme Court, but they're uniform. Colorado Supreme Court taxes cars built by GM that are brought to Colorado for testing, spend 1% of their life in Colorado and move on to other states where they're road tested. Use tax applied. As long as a credit is provided, the city, actually in that case, can tax the full value of those cars because of the nexus, the presence of General Motors in Colorado, plus the use, which in the Colorado case was 1%. As long as a credit is provided, it's fully constitutional to tax the whole amount. And not only are these cases sort of uniformly on our side, but there are no cases, there is not a single case in which a taxpayer had a presence, a physical presence in the state, like ATC Air does here, with corporate officers here, and used property in the state wherein a court, any court, found that there was an inadequate nexus to tax the use of that property. I've just listed three. I've got more listed in my brief. They have not a single case where they can point to to show their nexus argument is correct. Similarly, on apportionment, I've listed several cases. This is the case that I just listed, plus others in my brief, and they have, they do have one case here. It's Boyd Brothers from the appellate court in Alabama, but it is truly an outlier. It is a case in which the decision was made on other grounds, but in dicta, the court seemed to kind of relied on some Supreme Court income tax cases and reached an erroneous conclusion on how a use tax should be applied. But other than that, the case law is really overwhelming from every jurisdiction in the federal courts that a use tax need not be apportioned. It is externally consistent because a use tax pays for unlimited use. That's why it doesn't go beyond the value that the state is providing, because the state is providing unlimited use. And just because someone doesn't use it as much as they could, that doesn't render that tax unconstitutional. If there are no further questions, then. I have one other question, I think. Yes, sir. Yes, Your Honor. I think part of plaintiff's argument is that in order to be externally consistent, a tax must tax only that portion of the revenues which reasonably reflect the in-state component of the activity. Your argument is different on external. My argument is different on external consistency. External consistency has to be applied to a number of different types of taxes. And there are certain types of taxes where that inquiry makes more sense, like, for example, you know, a bus ticket that goes through three states and you can measure the mileage in each state and they say, well, one state can't tax the whole trip. That's sort of one circumstance where that application of external consistency makes sense. In the use tax context, they've looked at external consistency and they've said, wait a minute, for the use tax, you're paying for unlimited use. So you can move that plane to Illinois and hangar it there. So how is so it satisfies that sort of prong inherently satisfies that prong of external consistency because it's allowing unlimited use in the state and it's taxing the full purchase price. But what the courts have then done is said, well, there's probably in the use tax context maybe a more nuanced approach to external consistency where we look at is there a genuine threat of double taxation. And that's where the courts have said, well, as long as there's a credit, there's no genuine threat of double taxation. And so there's external consistency in that respect too. And they've approved all use taxes that have been adjudicated that have credits for use taxes paid in other states have been held to be constitutional and externally consistent even though they tax the entire value. Thank you. Thank you. Just a couple of points in reply. First, as a factual matter, I think it's important to remember here that ATC Air owned the airplane in question. But ATC Air did not own or operate the Hoffman Estates office. That was owned and operated by its parent company formerly known as American Tool Companies, known today as Irwin Industrial. So it was not ATC Air's office in Hoffman Estates. Council also suggests it was never owned by ATC Air. They had no employees there. They kept all their books and records back in Lincoln. It was their parents' office. Now, council also suggests that from an administrative standpoint, that we're going to have a parade of horrible situation here if this court were to endorse an apportioned use tax. What I would suggest, and this is laid out in detail in our briefs, is that other states are doing it. Florida has a statutory provision that permits airplane and truck owners to apportion the use tax that they might owe to the state. Other states are doing it for services, computer services, for example. They're doing it. It works. There's ways to do it. Here it's possible that maybe an airplane owner pays tax on 100 percent of their airplane at the outset, and then sometime down the road, whether it's after a year or two years, they can go back and look at their flight logs and determine the correct amount of tax that is due. But it is. It's administratively feasible. I'd also like to address what council said about the Quill case and how it might relate to this court's decision in Browns, especially as it relates to the physical presence requirement and whether one flight is enough. There is no question that there is a line somewhere, whether it's one flight, 10 flights, 20 flights. The Supreme Court made it clear in Quill that while a taxpayer needs a physical presence with the state, that what the court called the slightest presence is not enough. So you can have a presence in the state and yet not be subject to tax in the state. That's exactly what we had in Quill. Quill had some computer software in North Dakota, but the U.S. Supreme Court said they are not subject to tax because that computer software is not enough. It's a hypothetical, but I would suggest to this court that one flight is nowhere near enough. That wherever we draw the line, that one flight would certainly constitute the slightest presence. In the context of this case, I am suggesting that the nature and number of flights that the airplane took in this case also constitutes the slightest presence. Counsel, you were speaking earlier about ATC being a separate entity from Irwin. Correct. Are you saying that we must frame our analysis around whether ATC had the presence in Illinois or whether its activity in flying the plane opened it up to use tax rather than focusing on Irwin? Absolutely. Absolutely. ATC Air is the owner of the aircraft. Now, ATC Air was later merged out of existence, but in terms of legal title, ATC Air was the entity that owned the aircraft, that operated the aircraft. It was its employees that flew the airplane into Illinois. The fact that its corporate parent might have an office here, I think that's a total disconnect between the activity that the state is seeking to tax and the activities of the taxpayer here. So I think the focus does have to be on the aircraft owner. Counsel, following up on that, but who did ATC Air transport? Who were the people in the airplane? They transported any number of people. Not their corporate employees or all, but it was other corporate? Correct. They did transport employees of their parents. They transported some of the officers and directors, and there was overlap between the two companies. But they also transported customers. They transported outside consultants, outside attorneys. For themselves? No, it would be consultants for Irwin, yes. You know, counsel also suggests and mentions the D.H. Holmes case, which is a U.S. Supreme Court case involving the mailing of catalogs into Louisiana. It's an entirely different situation here. And while the Supreme Court did conclude that the use tax that Louisiana sought to impose was fairly apportioned, the catalogs in Louisiana or the catalogs in the D.H. Holmes case never left Louisiana. They stayed in the state. This is an entirely different situation. We have a plane that comes into Illinois and leaves. The tax here is not fairly apportioned under those circumstances. And I think in that respect, I think the Jefferson Lines case is really, really important, not only because of its discussion of external consistency, but because of the nature of the tax. What you had in Jefferson Lines was a sales tax. It was a tax imposed on a local, discrete event, the sale of a bus ticket. And because of that, the U.S. Supreme Court said we can't apportion that tax. That activity occurs locally. Here we don't have a discrete local event. The activity that the state is seeking to tax is really, at the end of the day, interstate activity. It's activity that occurs in 30 different states in multiple countries. So this is completely unlike the situation in Jefferson Lines as well as D.H. Holmes. Now, as far as the credit goes, counsel is suggesting that it's not an absolute guarantee that every plane or every state where the plane was flown is necessarily going to provide a credit. He offers examples of two states, Vermont and Indiana, that resisted providing a credit in certain situations. The only thing that the Constitution requires in order for a tax to be declared unfairly apportioned is that there be a risk or a threat of multiple taxation. Not that there be actual multiple taxation, but simply a risk or a threat. And we have that here. Because, again, as I mentioned before, many states provide a credit only for tax paid in the state of purchase. We have cited to those states in our brief. Here, to the extent that the hawker was flown to any of those states, there is unquestionably a risk of multiple taxation. And, again, for the reasons expressed previously and in our brief, I would respectfully ask that the decision of the appellate court be reversed. Thank you. Thank you, counsel. Case number 109300.